IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FLOYD JUNIOR JAYCOX | § | |
| | § | |
| V. | § | C.A. NO. C-05-462 |
| | § | |
| WARDEN MORALES, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On January 24, 2006, plaintiff filed a second motion for preliminary injunctive relief alleging that his life was in danger due to his housing assignment at the McConnell Unit. (D.E. 38). An evidentiary hearing was held on March 23, 2006, during which plaintiff was afforded the opportunity to testify, and defendants presented the testimony of Sergeant Parham, a witness, and two defendants, Major Bryan Gordy, and Sergeant Gamaliel Olvera, whom plaintiff cross-examined. Having considered the evidence and arguments of both parties, plaintiff's request for preliminary injunctive relief is denied.

### I. Jurisdiction

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. The parties consented to proceed before a magistrate judge (D.E. 10, 39), and the case has been reassigned to the undersigned United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 11).

## II. Background facts

Plaintiff is a former member of the prison gang Hermones Pistodes Latinos (H.P.L.). He filed this civil rights action on September 14, 2005, alleging that certain McConnell Unit officers and officials were deliberately indifferent to his health and safety because they denied his life in danger ("LID") claims and continued to house him in cells that had screen-type or "chicken wire" windows instead of plexiglass. He alleged that on July 1, 2005, while he was in the A-pod dayroom, an active H.P.L. gang member shot a home-made spear through the chicken-wire window, hitting him in his right upper arm. Despite this assault, defendants refused to transfer plaintiff to a cell with plexiglass doors.

On November 14, 2005, plaintiff filed his first motion for injunctive relief. (D.E. 20). Plaintiff sought an immediate transfer to D-pod or E-pod because the cells in those sections have plexiglass on the doors. On January 26, 2006, plaintiff's motion for injunctive relief was denied as moot because he had been transferred to E-pod and was in a cell with plexiglass. (D.E. 40).

On January 24, 2006, plaintiff filed his second motion for injunctive relief alleging that he had been transferred off D-pod and was now on A-pod, where the cells did not have plexiglass doors. (D.E. 38). Plaintiff contends that his current housing places him at a greater risk of being assaulted.

## III. Hearing testimony

Plaintiff testified that in, in 1999, he was a confirmed member of H.P.L. In 2000, he denounced his H.P.L. membership and he is currently in the "disassociation process." Because he relinquished his membership, he is now at a greater risk of assault from active H.P.L. members.

According to plaintiff, the McConnell Unit is "swarming" with hand-made spears, and he is routinely having spears thrown at him. He claims that he is at risk every time he goes to the A-pod dayroom because the inmates in A-pod can shoot the spears through the chicken-wire toward the dayroom. In February, 2006, an inmate named Tom Tom tried to spear him, but missed. He has not received any injuries since the July 2005 assault, but he is constantly in fear for his life.

Sergeant Parham investigated the February 2006 incident in which plaintiff alleged that a spear had been thrown at him from an A-pod cell. Plaintiff could not identify from what cell the spear was thrown. Sergeant Parham told Lieutenant Haggar that a weapon had been found on A-pod, and Lieutenant Haggar ordered a shake-down of the A-pod cells. During the shakedown, weapons were found in 15-cell. The inmate housed in 15-cell was not an H.P.L. gang member, but a member of the Texas Syndicate. Sergeant Parham did not file an LID report following the incident because he found no evidence that plaintiff had been the target of an assault or that the spear had actually been thrown at him. Sergeant Parham testified that the spear could have been passed from one inmate to the next.

Major Gordy testified that he was a member of the Unit Classification Committee ("UCC") on March 14, 2006, that consider plaintiff's LID claim and request to be transferred to E-pod or F-pod. According to Major Gordy, when he asked plaintiff if his life was in danger, plaintiff responded in an agitated manner that no one would help him, and he was then removed from the hearing room. Despite plaintiff's removal, the UCC considered his LID claim, including 3 sealed statements and the testimony of two sergeants. However, the UCC concluded that there was insufficient evidence to find that plaintiff's life was in danger.

Major Gordy also testified that plaintiff's requested transfer was inappropriate because he was effectively requesting to be housed with more violent offenders. Plaintiff is in administrative segregation, and his class is Line 1. Administrative segregation inmates are usually housed according to their Line status, i.e., Line 1 inmates are housed on the same pod(s), Line 2 inmates are housed on the same pod(s), and Line 3 inmates are housed on the same pod(s). Based on his line class, plaintiff is entitled to certain privileges that other administrative segregation prisoners do not have, such as commissary and recreation privileges. The more violent offenders, with a line class of 2 or 3, are housed in E-pod or F-pod. Although plaintiff believes the E-pod and F-pod cells are safer due to the plexiglass, Major Gordy testified that these cells are not necessarily safer, the inmates are undoubtedly more violent, and a burden would be placed on the administration of the jail if Line 1 inmates were housed indefinitely with Line 2 or Line 3 inmates.[1]

Sergeant Olvera is a gang intelligence officer who has investigated plaintiff's LID claims. Sergeant Olvera repeatedly asked plaintiff about the threats on his life, but plaintiff refused to name the offenders that were allegedly making threats against him. Sergeant Olvera's independent investigation found that there was no "hit" out on plaintiff. Concerning the February 2006 incident, there was no indication that the spear was meant to hit plaintiff because there is no "bad blood" between the H.P.L. and the Texas Syndicate.

## IV. Discussion

To obtain a preliminary injunction under FED.R.CIV.P. 65(a), the applicant must demonstrate: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the

---

[1] Plaintiff was housed in E-pod from mid-November 2005 through mid-January 2006 due to a shortage of pods that typically house Line 1 inmates.

movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might case the defendant; and (4) that the injunction will not disserve the public interest." Affiliated Professional Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999). Injunctive relief is an extraordinary remedy which requires the applicant to unequivocally show the need for its issuance. See Valley v. Rapides Parish School Bd., 118 F.3d 1047, 1050 (5th Cir. 1997).

On the first factor, plaintiff essentially claims that defendants are violating his Eighth Amendment right to be free from cruel and unusual punishment by failing to place him in a cell with a plexiglass cell door to protect him from possible attacks by other inmates. See Farmer v. Brennan, 511 U.S. 825, 832, (1994) (prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hand of other prisoners). Plaintiff's right to be protected from violence is not inconsistent with the goals of prison administrators, to have a secure and safe prison. See e.g. Hewitt v. Helms, 459 U.S. 460, 473 (1983) ("[t]he safety of the institutions guards and inmates is perhaps the fundamental responsibility of the prison administration"); Pell v. Procunier, 417 U.S. 817, 823 (1974) (security is "central to all other corrections goals"). The classification of inmates is "'a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances.'" Green v. McKaskle, 788 F.2d 1116, 1124 (5th Cir. 1986) (citation omitted).

Major Gordy testified that, for security purposes, the McConnell Unit houses together offenders with the same line class. The offenders with the greater security risk to staff and other offenders, that is Line 2 and Line 3 administrative segregation prisoners, are housed in the cells with plexiglass doors to reduce the incident of "chunking," that is, the throwing of body fluids such as

5

salvia, urine, blood, and feces, through the chicken wire. Plaintiff offered no evidence to demonstrate that the cells on E-pod or F-pod were necessarily safer, and Major Gordy testified to the contrary. He also testified that it would be an administrative burden to house Line 1 offenders with the higher security risk offenders due to the fact that Line 1 prisoners have privileges which the others do not.

In addition, defendants presented evidence that plaintiff's LID claims were investigated. Sergeant Olvera testified that there was no "hit" out on plaintiff, and plaintiff was unable to identify any specific offender who had threatened him. Moreover, except for the July 2005 incident, plaintiff has not been injured, despite his testimony that he has spears thrown at him repeatedly. To prevail on a failure to protect claim, plaintiff would have to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 847. Considering the testimony adduced at the preliminary injunction hearing, it does not appear at this time that plaintiff can establish deliberate indifference. Thus, he has failed to demonstrate a likelihood of success on the merits of his claims.

On the second factor, plaintiff fails to establish irreparable injury if the injunction is not granted. Per prison policy, plaintiff is being housed with similar line class offenders. He has not suffered a physical injury since filing his complaint. Although he complains about repeated instances of spears being thrown at him, gang intelligence officials have investigated his claims and have found he is not at such a risk to warrant protective custody.

The third and fourth factors do not weigh in plaintiff's favor. To grant plaintiff the relief he seeks, that is, to place him in a cell with a plexiglass door, would be an unreasonable interference with the administration and management of the prison. See Kahey v. Jones, 836 F.F.2d 948, 950

6

(5th Cir. 1988) (federal courts defer to prison administrators concerning day-to-day prison operations). Moreover, interference with prison operations in such circumstances would not be in the public's interest as it would be a waste of judicial resources micro-managing prison affairs. See Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976) (prison officials have broad discretion, free from judicial interference, in determining prisoner assignments).

Plaintiff has sought injunctive relief in his original complaint and, should he ultimately prevail on his Eighth Amendment claims, he can seek injunctive relief at that time. For these reasons, plaintiff's motion for a preliminary injunction (D.E. 38) is DENIED.

ORDERED this 29th day of March 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE